# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH HARDEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-383 NAB |
| | ) | |
| MICHAEL BOWERSOX, | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONSE TO ORDER TO SHOW CAUSE WHY
A WRIT OF HABEAS CORPUS SHOULD NOT BE GRANTED**

Because the petition does not rise to the high level required for issuing a writ, this Court should deny the petition.

### Statement of Custody and Parties

Petitioner Joseph Harden is incarcerated at the South Central Correctional Center in Licking, Missouri, due to the sentence and judgment of the Pemiscot County Circuit Court. The court found Harden guilty of first-degree murder, first-degree robbery, and two counts of armed criminal action and sentenced him to two concurrent terms of life imprisonment and two consecutive terms of ten years' imprisonment in the Missouri Department of Corrections. Harden serves these sentences. Warden Bowersox is Harden's custodian and the proper respondent. 28 U.S.C. §2254, Rule 2(a). Because

Taylor challenges a future consecutive sentence, Attorney General Chris Koster is also a proper respondent. 28 U.S.C. §2244, Rule 2(b).

## Statement of Exhibits

1. Respondent's Exhibit A is a copy of the legal file in Harden's direct appeal, Case No. SD30479.
2. Respondent's Exhibit B is a copy of the supplemental legal file in Case No. SD30479.
3. Respondent's Exhibit C is a copy of the transcript in Case No. SD30479.
4. Respondent's Exhibit D is a copy of Harden's Brief in Case No. SD30479.
5. Respondent's Exhibit E is a copy of the State's Brief in Case No. SD30479.
6. Respondent's Exhibit F is a copy of Taylor's Corrected Reply Brief in Case No. SD30479.
7. Respondent's Exhibit G is a copy of the court of appeals Order in Case No. SD30479.
8. Respondent's Exhibit H is a copy of the court of appeals Mandate in Case No. SD30479.
9. Respondent's Exhibit I is a copy of the legal file in Harden's appeal from the denial of post-conviction relief, Case No. SD32315.[1]
10. Respondent's Exhibit J is a copy of the supplemental legal file in Case No. SD32315.
11. Respondent's Exhibit K is a copy of the transcript in Case No. SD32315.
12. Respondent's Exhibit L is a copy of Harden's Brief and Appendix in Case No. SC92166.
13. Respondent's Exhibit M is a copy of the State's Brief in Case No. SD32315.
14. Respondent's Exhibit N is a copy of the court of appeals Order in Case No. SD32315.
15. Respondent's Exhibit O is a copy of the court of appeals Mandate in Case No. SD32315.

---

[1] The court also transferred the record from Case No. SD30479.

## Statement of the Case

Harden raises four grounds for relief in his petition: 1) evidence was insufficient to convict on first-degree robbery and armed criminal action; 2) evidence was insufficient to convict on first-degree murder and armed criminal action; 3) trial counsel was ineffective for failing to file motions to dismiss based on prosecutorial misconduct; and 4) trial counsel was ineffective for failing to move to strike Donald Booth's testimony.

This Court should dismiss this petition because all grounds fail on their merits.

## Merits Analysis

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) proscribes "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S.Ct. 2148 (2012) (citing *Renico* v. *Lett*, 130 S.Ct. 1855, 1866 (2010)). AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C §2254(d). This is a "difficult to meet . . . and highly deferential standard." 132 S.Ct. at 2151 (citing *Cullen* v. *Pinholster*, 131 S.Ct. 1388, 1398 (2011)). Harden does not meet this burden.

Harden claims in Ground 1 that there was insufficient evidence to convict him of first-degree robbery and armed criminal action (Petition, pp. 5-21). Harden raised this claim on direct appeal (Resp. Ex. D, p. 23), and the court of appeals denied it on the merits:

> In Defendant's first point, he contends that the evidence was insufficient to support his convictions for first-degree robbery and armed criminal action. We disagree.
> Robbery in the first degree is committed when a person "forcibly steals property" and in the course of doing so: (1) causes physical injury to any person; (2) is armed with a deadly weapon; (3) uses or threatens the immediate use of a dangerous instrument against any person; or ( 4) displays or threatens the use of what appears to be a deadly weapon or dangerous instrument. § 569.020.1(1)-(4). The amended information charged Defendant with causing physical injury to Al in the course of the robbery. *See* § 569.020.1(1). The two elements of armed criminal action are: (1) defendant committed a felony; and (2) the crime was committed "by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon[.]" § 571.015.1; *State v. Ware,* 326 S.W.3d 512, 517 (Mo. App. 2010). While the evidence supporting the robbery and armed criminal action convictions was largely circumstantial, this is immaterial. "When reviewing for sufficiency of the evidence, circumstantial evidence is afforded the same weight as direct evidence." *State v. Stewart,* 265 S.W.3d 309, 314 (Mo. App. 2008).
> Defendant argues there was no direct evidence proving that he used a concrete block to rob Al. Based upon our review of the record, the trial court was presented with ample circumstantial evidence from which the judge could have reasonably inferred that Defendant robbed Al and inflicted physical injury on him in the course of doing so.

4

The evidence showed that Defendant and Al were at an ATM together, and Al withdrew $220 in cash. The ATM surveillance video, admitted at trial as State's Exhibit 8, showed Al giving some of the cash to Defendant and then putting the rest in his wallet. After leaving the ATM, Defendant and Al were seen together at the nearby Brown's Grocery. Al's body was discovered behind a farm shop located only a few hundred yards from the grocery store; and a shirtless man with large letters tattooed across his back was seen walking along the highway near the farm shop shortly before the body was found. Defendant had his name tattooed in large letters across his back and shoulders. Al's head and face had been smashed with a blunt object, and a concrete block spattered with blood consistent with Al's DNA was found in a nearby field. Al's wallet was found in a trash can on the Brown's Grocery parking lot, and it contained no cash. Defendant's pants that he gave to the Wal-Mart employee were covered with blood that was later determined to be consistent with Al's DNA. This further suggests Defendant physically injured Al in the course of the robbery. From the foregoing evidence, the trial court could have reasonably inferred beyond a reasonable doubt that Defendant forcibly robbed Al of the money in his wallet, that he committed the robbery with the aid of a dangerous instrument in the form of a concrete block and that, in the course of doing so, he caused physical injury to Al.

Defendant offers alternative theories for how Al's wallet ended up in the trash can. He suggests that Al could have dropped the wallet on the ground where someone later found it and took the cash or that Al himself, who was intoxicated with drugs and alcohol, could have accidentally dropped the wallet in the trash. On appeal, however, we are required to disregard all evidence and inferences that are contrary to the fact-finder's decision. *State v. Wadley,* 327 S.W.3d 25, 27 (Mo. App. 2010). Furthermore, a factfinder's reasonable choice between competing inferences does not provide a basis for reversal. *State v. Freeman,* 269 S.W.3d 422, 424 n.4 (Mo. banc 2008). Defendant also points to the absence of fingerprints on Al's wallet, but it is well settled that the State is not required to account for the absence of fingerprints on physical evidence recovered by police. *See, e.g., State v. Schneider,* 736 S.W.2d 392, 401-02 (Mo. banc 1987); *State v. Holmes,* 389 S.W.2d 30, 34 (Mo. 1965); *State v. Neal,* 849 S.W.2d 250, 254 (Mo. App. 1993). In any event, the trial court was

5

> aware that *no one's* fingerprints or DNA were found on the wallet. The trial court reasonably could have inferred either that the wallet had been wiped clean prior to being discarded or that the leather simply did not retain fingerprints or DNA. *See State v. Carpenter,* 710 S.W.2d 284,285-86 (Mo. App. 1986). In sum, the State presented sufficient evidence from which the trial court reasonably could have found Defendant guilty beyond a reasonable doubt of first-degree robbery and armed criminal action. Point I is denied.

(Resp. Ex. G, pp. 8-10).

This determination by the court of appeals is reasonable and entitled to deference under section 2254(d). Where a petitioner asserts insufficient evidence to support a conviction, a federal court's scope of review is "extremely limited." *Sera v. Norris*, 400 F.3d 538, 543 (8th Cir.2005) (quoting *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir.2003)). The evidence is sufficient to support a conviction whenever, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson* v. *Virginia*, 443 U. S. 307, 319 (1979). A federal habeas court cannot overturn a state court decision regarding a sufficiency of the evidence challenge simply because it disagrees with the state court; the federal court may only overturn the decision if the state court decision was "objectively unreasonable." *Cavazos v. Smith*, 132 S.Ct. 2, 3 (2011).

The evidence at trial showed that the Harden and the victim were seen in two locations together before the killing. They were together at an ATM

6

and the victim gave money to Harden and kept some (Resp. Ex. C, p. 25; Resp. Ex. C, p. 66); the victim's wallet was later found empty (Resp. Ex. C, p. 62). They were also together at the grocery store behind which the victim's body was later found (Resp. Ex. C, pp. 30 & 39). The victim's body was found with its throat cut, head smashed, and with more than three dozen stab wounds (Resp. Ex. C, p. 38). An individual matching Harden's description was seen walking alone shortly after the victim was discovered (Resp. Ex. C, p. 31-33), and the victim's blood was found on Harden's pants (Resp. Ex. C, p. 79), shirt, hat (Resp. Ex. C, p. 77), and knife (Resp. Ex. 77). Any rational trier of fact could have found that Harden forcibly stole the victim's money and killed him in the course thereof.

Harden has not alleged nor shown how the Court of Appeals decision is "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) and (2), as defined by the Supreme Court in *Williams*, 529 U.S. at 412. This Court should deny Ground 1 as meritless.

Harden claims in Ground 2 that there was insufficient evidence to convict him of first-degree murder and armed criminal action (Petition, pp. 21-38). Harden raised this claim on direct appeal (Resp. Ex. D, p. 24), and the court of appeals denied it on the merits:

7

In Defendant's second point, he contends that the evidence was insufficient to support his convictions for first-degree murder and armed criminal action. Again, we disagree.

A defendant "commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." § 565.020.1; *State v. Martin,* 291 S.W.3d 269, 275 (Mo. App. 2009). "Deliberation" is defined as "cool reflection for any length of time no matter how brief[.]" § 565.002(3). Proof of deliberation may be inferred, although it still must be proved beyond a reasonable doubt. *State v. Strong,* 142 S.W.3d 702, 717 (Mo. banc 2004). When the defendant has committed a murder which, because of the particular means of attack, required some time to complete, deliberation may be inferred. *Martin,* 291 S.W.3d at 276. In addition, deliberation may be inferred when there are multiple wounds or repeated blows. *Strong,* 142 S.W.3d at 717.

Defendant suggests two reasons why the evidence was insufficient: (1) the State's evidence falls short of proving beyond a reasonable doubt that Defendant was the killer; and (2) assuming *arguendo* that Defendant did murder Al, the evidence does not show that he acted deliberately. Neither argument has merit.

First, viewed in the light most favorable to the judgment, the evidence and reasonable inferences derived therefrom were sufficient for the trial court to conclude beyond a reasonable doubt that Defendant was the person who killed Al. There was evidence from which the court could have inferred that Defendant and Al were together at Brown's Grocery at 5:45 a.m. That location was only a few hundred yards from where Al's body was later discovered. The court also could have inferred that Defendant was the shirtless man with a tattoo on his back who was seen leaving the farm shop between 7:00 a.m. and 7:30 a.m. This person had something in one of his hands. Al's head and face had been crushed with some sort of blunt object. In a field behind the farm shop, police recovered a large concrete block with Al' s DNA on it. Al also had been cut and repeatedly stabbed. The police later recovered a knife near the murder scene - a knife identified in court as belonging to Defendant - that contained blood on the blade consistent with Al's DNA. Sometime after 7:30 a.m., Defendant threw away a white sleeveless t-shirt and a camouflaged baseball cap on a vacant lot. The shirt contained a

8

mixture of DNA profiles consistent with Defendant and Al. The DNA on the hat was consistent with Al's profile. At the Wal-Mart store, Defendant lied about why he was not wearing a shirt. He bought new clothing and had the clerk discard the old clothes. Police recovered these clothes, and Defendant's jeans were covered with large blood stains. The DNA from the blood was consistent with Al's profile.

The DNA evidence linking Defendant to this crime was very strong. That evidence alone provided a sufficient basis for the trial court to conclude that Defendant killed Al. *See Freeman,* 269 S.W.3d at 425. While Defendant argues that Al's DNA could have been innocently transferred to Defendant's clothing, the trial court was free to disregard this inference in favor of the competing inference that Al's DNA was transferred when Defendant killed Al. The other evidence summarized above also tends to identify Defendant as Al's killer. While Defendant rightly points out there were slight inconsistencies in the two descriptions of the man walking away from the scene, we defer to the fact-finder's superior position to weigh the evidence and resolve conflicts in witnesses' testimony. *Wadley,* 327 S.W.3d at 27. In sum, the strength of the DNA evidence, together with the other corroborating evidence favorable to the judgment, was sufficient for the court to determine beyond a reasonable doubt that Defendant killed Al.

Second, viewed in the light most favorable to the judgment, the evidence and reasonable inferences derived therefrom were sufficient for the trial court to conclude beyond a reasonable doubt that Defendant deliberated before killing Al. "Proof of deliberation does not require proof that the defendant contemplated his actions over a long period of time .... " *State v. Johnston,* 957 S.W.2d 734, 747 (Mo. banc 1997). Like most elements of *mens rea,* deliberation is ordinarily shown through proof of the circumstances surrounding the killing. *State v. O'Brien,* 857 S.W.2d 212, 218-19 (Mo. banc 1993). The evidence showed that Al had multiple cuts to his neck and throat. According to the autopsy report, these wounds were inflicted while Al was alive. Nevertheless, the primary cause of death was massive blunt trauma to the head. Therefore, the court reasonably could have inferred that the attack on Al took some time to complete and that Defendant had a chance to stop the attack after it began. This was sufficient to prove that Defendant

9

> had at least a cool moment of reflection before killing Al, which is all that is required for deliberation to exist. *See State v. Andrews,* 329 S.W.3d 369, 378 (Mo. banc 2010); *State v. Simmons,* 955 S.W.2d 729, 739 (Mo. banc 1997). Point II is denied.

(Resp. Ex. G, pp. 10-13).

This determination by the court of appeals is reasonable and entitled to deference under section 2254(d). The record supports, for the same reasons as discussed in Ground 1, *supra,* that Harden killed the victim and did so with deliberation. Harden has not alleged nor shown how the Court of Appeals decision is "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) and (2), as defined by the Supreme Court in *Williams,* 529 U.S. at 412. This Court should deny Ground 2 as meritless.

Harden claims in Ground 3 that trial counsel was ineffective for failing to move to dismiss the case for prosecutorial misconduct (Petition, pp. 38-42). Harden raised this claim on appeal from the denial of post-conviction relief (Resp. Ex. L, p. 34) and the court of appeals denied it on the merits:

> In his first point, Movant claims that his trial counsel should have filed a motion to dismiss either the charges against him or the State's notice of its intent to seek the death penalty because the State's decision to seek the death penalty was based on prosecutorial vindictiveness. Movant claims in his point that "After [Movant] chose to have a preliminary hearing and wanted to go to trial on the charges, *rather than to accept any plea offer from the State*, the prosecutor filed its notice of intent to seek the

10

death penalty." (Emphasis added.) On the record before the motion court, no such vindictiveness occurred.

There are two ways to prove prosecutorial vindictiveness: (1) "if a realistic likelihood of vindictiveness is found, a presumption is erected in [the] defendant's favor[,] which the prosecutor must rebut"; or (2) "a defendant can make a case for prosecutorial vindictiveness without the aid of the . . . presumption if he can prove, through objective evidence[,] that the sole purpose of the State's action was to penalize him for exercising some right." *State v. Potts*, 181 S.W.3d 228, 233-34 (Mo.App. 2005) (citing *United States v. Goodwin*, 457 U.S. 368, 380 n.4, 384, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)). "Reasonable likelihood" is determined by weighing two factors: (1) the prosecutor's stake in deterring the exercise of the right being asserted; and (2) the prosecutor's actual conduct. *State v. Cayson*, 747 S.W.2d 155, 158 (Mo.App. 1987). Movant's preliminary hearing took place September 8, 2008, after which he was bound over to circuit court. Shortly thereafter, on September 23, 2008, the State filed its Notice of Intent to Seek the Death Penalty. The State filed the Information on October 7, 2008, and Movant entered a plea of not guilty that same day. Movant's initial attorney, Brandon Sanchez, filed a Motion to Withdraw on October 15, 2008, and Movant's new counsels, Robert Wolfrum and Beth Davis-Kerry, entered appearances on Movant's behalf on November 6, 2008. According to Movant's testimony at the evidentiary hearing in the motion court, it was Wolfrum who informed Movant of the State's offer of twenty years' incarceration in exchange for a guilty plea. There is no evidence in the record of any plea offer being made or any plea negotiations taking place *before* the State filed its Notice of Intent to Seek the Death Penalty on September 23, 2008.

While it can be argued that a prosecutor will always have some stake in deterring a defendant from asserting his or her right to trial by jury—e.g., lowering the risk of acquittal—the obstacle for Movant in the case at bar exists in the prosecutor's actual conduct. Movant's argument on this point claims that "the timing of the State's filing of its notice of death, combined with [Movant's] absolute refusal to plead, indicated that the State was penalizing [Movant] for insisting on a trial." In making this argument, Movant ignores the actual timing of events. Indeed, not only did the State file its notice of intent to seek the death

11

>penalty two weeks before filing the Information, but by Movant's own admission, he was unaware of any plea offer until after the notice of intent had been filed and his capital counsels entered their appearance. As such, it would have been impossible for the State to have filed the notice of intent to seek the death penalty solely to punish Movant for asserting his right to trial. Movant provides no other logical argument as to how the State's action constituted prosecutorial vindictiveness.
>
>As Movant did not meet his burden of demonstrating prosecutorial misconduct, any motion to dismiss on that ground that trial counsel might have filed would have been denied. "We will not deem counsel to have been ineffective for failing to file a meritless motion[.]" *State v. Neal*, 849 S.W.2d 250, 258 (Mo.App. 1993) (citing *State v. Hunter*, 840 S.W.2d 850, 870 (Mo. banc 1992); *State v. Twenter*, 818 S.W.2d 628, 643 (Mo. banc 1991)). Movant's first point is denied.

(Resp. Ex. N. pp. 8-10) (internal footnote omitted).

This determination by the Missouri Supreme Court is reasonable and entitled to deference under section 2254(d).

In order to overturn a conviction on grounds of ineffective assistance of counsel, a petitioner must show both that: 1) his counsel's performance was objectively unreasonable, and 2) he was prejudiced as a result of his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Courts reviewing counsel's performance must be "'highly deferential' in assessing whether counsel's course of conduct could be considered a sound trial strategy rather than an error, and must 'indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Marcrum v. Luebbers*, 509 F.3d 489, 502 (8th

Cir.2007) (quoting *Strickland*, 466 U.S. at 689). The possibility of a different result must be substantial, not just conceivable. *Harrington v. Richter*, 131 S.Ct. 770, 792, (2011). A petitioner must meet both the performance and the prejudice condition to prevail on an ineffective assistance claim, "and the court need not address both if one condition is insufficiently established." *James v. Iowa*, 100 F.3d 586, 589–90 (8th Cir.1996).

A motion to dismiss for "prosecutorial vindictiveness" is not an accepted or successful legal action, but even if it were, Harden's timing is off. The State filed its notice to seek the death penalty on September 23, 2008, only two weeks after probable cause to prosecute was found in a preliminary hearing and still two weeks before Harden was even formally charged (Resp. Ex. A, p. 8). The aggravating circumstances supporting the notice were factually accurate and the State was under no obligation to disclose its intent to seek death at any particular point. The State denied having an ulterior motive in filing its notice when it did (Resp. Ex. M, p. 27), and both trial counsels felt that the State was not unreasonable in filing its notice. One counsel stated she believed the State filed its notice for Harden's benefit, ensuring that Harden would receive experienced defense counsel (Resp. Ex. M, p. 24-27).

Harden has not alleged nor shown how the Court of Appeals decision is "a decision that was contrary to, or involved an unreasonable application of,

13

clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) and (2), as defined by the Supreme Court in *Williams*, 529 U.S. at 412. This Court should deny Ground 3 as meritless.

Harden claims in Ground 4 that trial counsel was ineffective for failing to move to strike witness Booth's testimony (Petition, pp. 43-48). Harden raised this claim on the appeal from the denial of post-conviction relief (Resp. Ex. L, p. 36), and the court of appeals denied it on the merits:

> In his second point, Movant claims that trial counsel should have moved to strike Donald Booth's trial testimony, which differed from Booth's testimony at the preliminary hearing. We disagree.
> At Movant's preliminary hearing, Donald Booth testified that he was helping his mother load a television into a truck and that "a white guy" helped them. When asked if he had seen the man helping them go over to a porch on the adjacent lot, Booth replied, "I wasn't paying no attention." He later said that he saw a red handkerchief under the steps. At trial, however, Booth testified that he saw the man "[t]hrow the clothes down in the porch" and told police. On cross-examination, Booth acknowledged that his trial testimony differed from his testimony at the preliminary hearing. The trial court then asked Booth to clarify some of his statements, and Booth stated that he "saw somebody throw, just a wad in his hand and did that." When his mother left to drive Movant to Kennett, Booth went over to the adjacent lot and saw a "T-shirt and the hat, . . . and red, like a straw red, like handkerchief." Booth told the trial court that he told the police chief about what he saw. The trial court then acknowledged that Booth "gave conflicting testimony as to what he's testifying to today here [and] at the preliminary hearing and I'll note those portions that I've read into the record in attempting to impeach his testimony here today with his prior inconsistent statements." Both the State and Movant's trial

14

>    counsel agreed to the trial court taking judicial notice of the applicable portions of the transcript, including all of Booth's preliminary hearing testimony.
>
>    "Conflicts between a witness's trial testimony and previous testimony or statements are for the trial court to reconcile in assessing credibility." *State v. Gray*, 230 S.W.3d 613, 620 (Mo.App. 2007). That is, the inconsistencies between Booth's testimony at the preliminary hearing and at trial went to the weight of the evidence, not its admissibility. *See State v. Eiland*, 534 S.W.2d 814, 816 (Mo.App. 1976) ("Inconsistencies such as these affect the weight, not the admissibility or sufficiency, of the evidence. It is for the jury to determine whether the witness'[s] testimony at trial is credible in the light of the inconsistencies."). As such, any motion to strike Booth's testimony would have been denied. "We will not deem counsel to have been ineffective for failing to file a meritless motion or for failing to object to admissible evidence." *Neal*, 849 S.W.2d at 258 (citing *Hunter*, 840 S.W.2d at 870; *Twenter*, 818 S.W.2d at 643). Movant's second point is denied.

(Resp. Ex. N, pp. 10-11) (internal footnote omitted).

This determination by the Missouri Supreme Court is reasonable and entitled to deference under section 2254(d). There is no support for the proposition that the fact that a witness has made prior inconsistent statements is a ground for excluding his testimony. Prior inconsistent statements are areas for for cross-examination, impeachment, and credibility arguments, but not exclusion of testimony. Harden has not alleged nor shown how the Court of Appeals decision is "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §

15

2254(d)(1) and (2), as defined by the Supreme Court in *Williams*, 529 U.S. at 412. This Court should deny Ground 4 as meritless.

## Conclusion

This Court should deny the petition.

Respectfully submitted,

CHRIS KOSTER
Attorney General


\s\ Katharine A. Dolin
KATHARINE A. DOLIN
Assistant Attorney General
Missouri Bar No. 64817

P. O. Box 899
Jefferson City, MO 65102
(573) 751-0475
(573) 751-3825 FAX
Katharine.Dolin@ago.mo.gov
Attorneys for Respondent

Case: 4:14-cv-00383-NAB   Doc. #:  7   Filed: 04/16/14   Page: 17 of 17 PageID #: 96

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing was electronically filed by using the CM/ECF system. I further certify that some of the participants in the case may not be CM/ECF users. In those instances, I have mailed the foregoing document, postage prepaid, this 16 day of April, 2014, to:

Joseph Harden  #286322
South Central Correctional Center
255 W. Hwy. 32
Licking, MO 65542


<u>/s/ Katharine Dolin</u>
Katharine Dolin
Assistant Attorney General